UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENELLE ELAINE NEAL,

  Plaintiff,

v.              Case No. 6:21-cv-2034-MAP

COMMISSIONER OF SOCIAL SECURITY

  Defendant.
_____/

**ORDER**

  Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider the opinion of Jorge Pena, Ph.D. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

  *I. Background*

  Plaintiff, who was born in 1975, claimed disability beginning January 2, 2009 (Tr. 213, 222). She was 33 years old on the alleged onset date. Plaintiff completed two years of college, and her past relevant work experience included work as an accounting clerk (Tr. 50, 243, 680-81). Plaintiff alleged disability due to bipolar

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

disorder, inflammation of the bladder, knee injury, colitis, depression, suicidal thoughts, and anxiety (Tr. 242).

Given her alleged disability, Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 213-21, 222-28). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 82-84, 99, 115-23, 131-40). Plaintiff then requested an administrative hearing (Tr. 141-43). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-55). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-33).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 13, 2013, and had not engaged in substantial gainful activity since January 2, 2009, the alleged onset date (Tr. 18). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: morbid obesity, knee degenerative joint disease (DJD), gastritis, affective disorder, and anxiety disorder (Tr. 18). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following limitations: could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but never ladders, ropes, or scaffolds; must avoid work at heights and work with dangerous machinery, constant vibration,

and constant temperatures over 90 degrees Fahrenheit and under 40 degrees Fahrenheit; and work tasks should be simple one to three steps, performed independently and repetitively with no interaction with the public and only occasional interaction with coworkers and supervisors (Tr. 20).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23-24).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 25).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a small parts assembler, a laundry folder, and an inspector and hand packager (Tr. 26).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 27).

Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 210-12).  Plaintiff then timely appealed that decision to the United States District Court for the Middle District of Florida, Orlando Division, which reversed and remanded the matter for further administrative proceedings before the SSA (Tr. 736-746).  Specifically, the ALJ was directed to reevaluate the opinion of Dr. Alex Perdomo and to include the use of an assistive

device in the RFC (Tr. 634, 736-46).  Following that, the Appeals Council remanded the matter to an ALJ for further administrative proceedings (Tr. 747-51).  Thereafter, Plaintiff appeared for a telephonic hearing before the ALJ (Tr. 659-86).  The ALJ then issued a decision finding Plaintiff not disabled and accordingly denying benefits again (Tr. 631-58).

In doing so, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since January 2, 2009, the alleged onset date (Tr. 636).[2]  The ALJ then determined that Plaintiff had the following severe impairments: morbid obesity, DJD of the knee, bipolar disorder, and major depressive disorder (Tr. 637). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 637). Based on the evidence of record, the ALJ determined that Plaintiff retained the RFC to perform sedentary work with the following exceptions: used a cane to ambulate; could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; could never climb ladders, ropes, and scaffolds; needed to avoid work at heights, work with dangerous machinery and dangerous tools, constant vibration, constant temperatures

---

[2] During the second administrative hearing, Plaintiff's attorney indicated a desire to amend the alleged onset date to February 10, 2011 (Tr. 663).  Notwithstanding, the ALJ's subsequent decision reflects the original alleged onset date of January 2, 2009 (Tr. 636).  Since Plaintiff did not set forth an objection to the ALJ's use of the original alleged onset date, any discrepancy is not germane to the issue presented.

over 90 degrees Fahrenheit and under [40 degrees] Fahrenheit,[3] and foot controls; and work tasks could be up to one to five steps learned in 30 days with performance at her own workstation, no tandem tasks, and occasional interaction with the general public (Tr. 639). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 641).

Considering Plaintiff's noted impairments and the assessment of a VE, however, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 646). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an addresser, a small products inspector,[4] and an electronic wafer breaker (Tr. 647, 681-82). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 648).[5] Plaintiff then

---

[3] The ALJ appears to have also tried to place a lower limit on the temperature requirements, stating "and under Fahrenheit," but failed to identify a specific temperature for the lower limit (Tr. 639). During the second administrative hearing, however, the ALJ posed a hypothetical to the VE incorporating all of the limitations set forth in the RFC, including a lower limit of temperatures for "under 40 degrees Fahrenheit" (Tr. 681-82). The same limitation was likewise identified in the RFC in the prior administrative decision (Tr. 20).

[4] The decision identifies one of the positions as a small produce inspector (Tr. 647), but the VE testified that the position was that of a small products inspector (Tr. 682). Accordingly, the reference to the small produce inspector seems to reflect a scrivener's error.

[5] The ALJ additionally considered and denied Plaintiff's objection based on the alleged invalidity of the authority of the Commissioner or Acting Commissioner under *Seila Law LLC*

timely appealed that decision to this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Standard of Review

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart

---

*v. Consumer Fin. Prot. Bureau*, 140 S.Ct. 2183 (2020) to appoint ALJs to render administrative decisions (Tr. 648, 990-91).

P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court

sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

  III. Discussion

Plaintiff solely argues that the ALJ erred by failing to properly consider the medical opinion of Dr. Pena, a state agency medical consultant. Under the regulations applicable to Plaintiff's claims, medical opinions consist of statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).[6] When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179 (citation omitted). Indeed, the regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927.

---

[6] The new regulations governing the treatment of medical opinions apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. As Plaintiff submitted her applications for benefits in April 2014 (Tr. 213-21, 222-28), the prior regulations governing the treatment of medical opinions apply to Plaintiff's claims. *See* 20 C.F.R. §§ 404.1527, 416.927. Any other references to the regulations herein are to those in effect at the time of the ALJ's decision.

In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ may reject any opinion when the evidence supports a contrary conclusion, the medical source fails to explain or provide objective medical evidence in support of the opinion, or the opinion is inconsistent with the record. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*) (citation omitted). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, however, so long as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Here, Dr. Pena reviewed the evidence of record through August 2014 and offered an opinion as to Plaintiff's mental impairments, including the severity of such impairments and the limitations stemming therefrom (Tr. 61-62, 72-75, 77-79). Initially, Dr. Pena determined that Plaintiff's affective disorder constituted a severe impairment, but that Plaintiff's anxiety disorder constituted a non-severe impairment

(Tr. 61, 72). Dr. Pena concluded that Plaintiff experienced mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration because of her mental impairments (Tr. 73). Dr. Pena noted that the information provided by Plaintiff was "somewhat inconsistent" with the information provided by independent evaluators (Tr. 74). More specifically, Dr. Pena stated that Plaintiff reported difficulty following instructions and memory and concentration problems that appeared incongruent with observations by evaluators, including the lack of any notes regarding any obvious signs of confusion or severe disturbance, and inconsistent with her reported capacity to leave home independently, manage her funds on her own, shop, and drive (Tr. 74, 78). Dr. Pena pointed to Plaintiff's statement regarding experiencing panic attacks since 2005 while maintaining the ability to work until 2009 as a basis for finding that her panic attacks did not seem to interfere with her capacity to function in a work environment (Tr. 74). He likewise highlighted Plaintiff's recent statement during an assessment regarding her history of hospitalizations, for which she provided no objective support, in deeming her reports only partially credible (Tr. 74).

In assessing Plaintiff's limitations, Dr. Pena found that Plaintiff experienced limitations in her ability to maintain sustained concentration and persistence, specifically noting that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 77-78). Dr. Pena also determined that Plaintiff would experience limitations with her social interaction, including moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers and peers without distracting them or exhibiting behavioral extremes (Tr. 78). Dr. Pena concluded that Plaintiff was capable of remembering locations and simple instructions; was generally capable of sustaining concentration and persistence but may experience occasional difficulty carrying out tasks on schedule, maintaining attention for extended periods of time, and completing consistently a normal work week because of interfering emotional responses, lack of motivation, and physical issues; did not show obvious sings of psychosis; was able to communicate with others and could adequately interact but may experience occasional difficulties responding to criticism and getting along with coworkers as a result of interfering emotional responses and a low frustration tolerance threshold; and was generally capable of responding adequately to situations that required adaptation (Tr. 78).

      In sum, Dr. Pena found that Plaintiff showed signs of depression and anxiety but did not have an extensive history of mental health treatment, appeared stable on medications, resided independently, and indicated she could manage her activities of daily living, driving, relating to others, shopping independently, coping with monetary transactions, providing care for her animals, and doing other everyday tasks with

limitations related to physical factors (Tr. 78). Given his findings and the evidence of record, Dr. Pena determined that Plaintiff was mentally capable of performing simple, work-related tasks that did not interfere with possible physical limitations but that she would continue to benefit from psychiatric and psychological assistance (Tr. 78).

The ALJ's decision reflects that the ALJ considered Plaintiff's limitations relating to her ability to interact with others, including Dr. Pena's opinion on the issue (Tr. 637-46). Initially, the ALJ found that Plaintiff experienced moderate limitations in interacting with others, noting that Plaintiff did not spend time with others, reportedly just visited the grocery store once per month, and indicated that she only got along with her mother and isolated herself from friends when depressed (Tr. 638). The ALJ also noted that Dr. Pena and another state agency medical consultant, Dr. George Grubbs, found that Plaintiff experienced moderate difficulties in social functioning (Tr. 638). The ALJ then went on to discuss Plaintiff's statements regarding her mental impairments and limitations and the evidence of record related to those impairments (Tr. 640-46). In doing so, the ALJ discussed and considered Dr. Pena's opinion, summarizing Dr. Pena's findings, along with the similar findings of Dr. Grubbs, and assigning the opinions and comments of each some weight, as they had the opportunity to evaluate the medical records and were both considered experts in the field (Tr. 645). Based on Dr. Pena's opinion, along with the other evidence and opinions of record, the ALJ accounted for Plaintiff's mental impairments in the RFC by limiting Plaintiff to work tasks that could be up to one to five steps learned in 30

days, performance at her own workstation, no tandem tasks, and occasional interaction with the general public (Tr. 639).

Plaintiff contends that the ALJ erred by not accounting for Dr. Pena's opinion that Plaintiff may experience occasional difficulties responding to criticism and getting along with coworkers (*see* Tr. 78). According to Plaintiff, she suffered prejudice from that omission because the ALJ's hypothetical to the VE did not comprehensively describe Plaintiff's limitations and impairments, as the hypothetical did not include a limitation to occasional interaction with coworkers and supervisors.[7] Had the ALJ included such limitation, the small products assembler and electronics wafer breaker positions would be eliminated, leaving only the addresser position, according to testimony provided by the VE in response to a question posed by the ALJ during the administrative hearing (Tr. 682). Given the reduction of available positions from three to one when the limitation to occasional interaction with coworkers and supervisors was included in the hypothetical, Plaintiff argues that the matter should be remanded since the ALJ did not make a finding about whether the addresser position provided a

---

[7] At step five, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *see Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). In making that finding, the ALJ may rely upon the testimony of a VE. *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (noting that the ALJ may rely upon a VE's knowledge or expertise). For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

significant number of jobs available in the national economy absent inclusion of the other two positions.

As the Commissioner asserts, however, the ALJ properly considered Dr. Pena's opinion and the limitations stemming from Plaintiff's mental impairments. To begin, the ALJ afforded Dr. Pena's opinion only "some weight" rather than substantial or controlling weight, meaning the ALJ presumably did not find the opinion fully persuasive (Tr. 645). The record supports the ALJ's assessment of Dr. Pena's opinion. For example, as the ALJ discussed, although the record contained reference to Plaintiff's difficulty getting along with others and social isolation (Tr. 482, 501, 554-56, 1233), examination and treatment notes repeatedly indicated that Plaintiff was pleasant, attentive, cooperative, demonstrated normal behavior and affect, communicated effectively, engaged in appropriate conversation, and followed commands appropriately and that Plaintiff stabilized on medication, including a notation that her socialization with others was "normal" and that she got "along better with others better now with her medication" (Tr. 495, 501, 626-27, 643-44, 1138, 1142, 1147-49, 1159, 1164-65, 1189-90, 1192, 1195, 1198, 1201, 1204, 1207). Moreover, Dr. Pena's opinion that Plaintiff may experience occasional difficulties responding to criticism and getting along with coworkers did not equate to a limitation in the RFC to only occasional interaction with supervisors or coworkers.

As the decision indicates, the ALJ discussed the medical evidence of record and Dr. Pena's findings, incorporated the pertinent social-interaction limitations into the RFC, and posed a comprehensive hypothetical to the VE encompassing those

limitations. In response, the VE provided testimony indicating that a hypothetical individual with Plaintiff's limitations could perform other work existing in significant numbers in the national economy, including that of an addresser, a small products inspector, and an electronic wafer breaker (Tr. 639-47, 680-85). The ALJ therefore provided substantial evidence in support of the decision.

To the extent that Plaintiff argues that remand is warranted because inclusion of a limitation to occasional interaction with coworkers and supervisors would reduce the total number of jobs available, and the determination of whether the remaining number of jobs satisfies the Commissioner's burden at step five to show other jobs exist in significant numbers in the national economy is a fact-intensive inquiry better suited to the ALJ, such argument fails. Even if the RFC included the limitation to occasional interaction with coworkers and supervisors, the addresser position would still provide a substantial number of jobs available in the national economy to satisfy the ALJ's burden at step five. Indeed, when adding the limitation, the VE did not indicate that the total number of jobs available for the addresser position would be decreased or impacted in any way. Rather, the VE testified that 31,000 addresser jobs were available nationally and could be performed by a hypothetical individual with Plaintiff's limitations, including a limitation to occasional interaction with coworkers and supervisors (Tr. 682). As the Commissioner asserts, therefore, the finding that Plaintiff maintained the ability to perform the job of addresser, which was available in significant numbers, provided substantial evidence to support the ALJ's finding at step five. *See, e.g.*, *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 319-20 (11th Cir. 2021)

("Although we previously have not addressed in a published opinion how many jobs constitute a significant number, we have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers.") (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)); *Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) (*per curiam*) (same); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934-35 (11th Cir. 2015) (finding that a VE's testimony that 440 jobs in the state and 23,800 jobs nationally constituted work existing in significant numbers in the national economy and provided substantial evidence for a finding that the plaintiff was not disabled); *see also* 20 C.F.R. §§ 404.1566, 416.966. Remand is thus not warranted.

    IV.    *Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

    ORDERED:

    1.    The decision of the Commissioner is affirmed.

    2.    The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of December, 2022.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record